**STONER et al. v. DOHERTY.**

**DOHERTY v. STONER et al.**

Nos. 10168, 10169.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 20, 1950.

Decided April 26, 1950.

Mr. Prentice E. Edrington, Washington, D. C., for appellants in No. 10168 and appellees in No. 10169.

Mr. Spencer Gordon, Washington, D. C., with whom Mr. Cornelius H. Doherty, Washington, D. C., was on the brief, for appellee in No. 10168 and appellant in No. 10169.

Before STEPHENS, Chief Judge, and WILBUR K. MILLER and FAHY, Circuit Judges.

FAHY, Circuit Judge.

These are cross-appeals from an order of the United States District Court, sitting as a Probate Court, allowing compensation to an executor, in addition to commissions previously allowed, for his services in the operation of a business which constituted a part of the estate. The executor, Doherty, contends that the allowance was inadequate. The residuary legatees, Stoner and others, contend that any additional allowance was erroneous.

The late Christina Buchholz died January 15, 1945, leaving as part of the residuary estate disposed of by her will the business known as the Occidental Hotel and Restaurant in the District of Columbia. Doherty was appointed executor and Letters Testamentary issued to him. The will provided "that he be allowed the maximum compensation permitted by law", and also, "I hereby give to my Executor full power and discretion in the management and control of my estate, with the right and power to sell all, or any portion thereof, which he may deem necessary or advisable for the payment of my just debts, the settlement of my estate, or in the best interests of my estate; * * *". On February 9, 1945, the executor was authorized and directed by the Probate Court "to conduct the hotel and restaurant business * * * for a period not exceeding one year from January 15, 1945". He conducted the business until he sold it on February 1, 1946. The price obtained was the approximate value

of the tangible assets and a few thousand dollars for name and good will; in other words, the business was not sold as a going-concern, due apparently to the lack of a lease on part of the premises used.

More than a year after the sale the executor, on February 24, 1947, filed his restated second account.[1] He included no item for compensation to himself specifically attributable to his work in connection with the operation of the business. Independently of that matter litigation arose between the executor and the residuary legatees over the basis and amount of his compensation, eventuating in our decision in Doherty v. Stoner, 1948, 83 U.S.App. D.C. 365, 169 F.2d 965. We held that the provision in the will that the executor "be allowed the maximum compensation permitted by law" entitled him, under 20 D.C.Code § 605,[2] to 10% of the inventory or inventories of the assets of the estate, including the gross value of the real estate though only its net proceeds came into his hands. As a result the executor became entitled to $40,561.00. Included in the inventory is the sum of $18,041.14 representing profits from the conduct of the business after the death of testatrix and until its sale.

Two years and nine months after the sale and two years after he made his first claim for commissions involved in the prior litigation the executor filed his present claim for 10% on the sum of $348,709.01 described as "disbursements of payroll, operating expenses and miscellaneous expenses incidental to the operation of the Occidental Hotel". The Probate Court approved an allowance of 2½% of said disbursements, amounting to $8,717.72. Were this added to the $40,561.00 previously authorized as commissions the compensation of the executor would be increased to $49,278.72. The net value of the estate is approximately $350,000.

We think nothing should have been allowed on the present claim. The executor contends to the contrary that we should not disturb the discretion exercised by the Probate Court. We would give appropriate weight to the discretionary action of the Probate Court in arriving at the amount were that the focal point of our review. But we are of the opinion that as a matter of law no additional allowance should have been made. Discretion as to the amount therefore is not involved.

The executor also contends that the disbursements upon which the 10% commission is now requested were for payroll, operating and miscellaneous expenses incident to conduct of the business and the commission is not sought on receipts or amounts spent for merchandise; that since 20 D.C.Code § 116 (1940) provides that debts contracted and obligations incurred by a fiduciary in continuing the business of a decedent should be deemed expenses of the administration of the estate, he should be entitled to a commission on these debts and obligations on which he made disbursements. But the Code provides that his commission or percentage shall be based on "inventory", not on disbursements for debts and obligations.

The executor brings to his support also the instance of an allowance of 6% of disbursements for payroll, operating expenses and miscellaneous expenses made by the Probate Court in the Matter of the Estate of Julius Garfinckel, Probate No. 50780. It is argued that since the will in the present case directed payment to the executor of the maximum compensation permitted by law he should be paid on as favorable a basis as was used in the Garfinckel estate. Although the administration of that estate also involved operating a business until it could be sold the action of the Probate Court relied upon is of little value in deciding the present case. It does not appear

1. This account in its original form was filed in November, 1946.

2. "Disbursements and allowances.
   "On the other side shall be stated the disbursements by him made, namely: * * * Fourth. His commissions, which shall be at the discretion of the court, not under one per centum, nor exceeding ten per centum on the amount of the inventory or inventories, excluding what is lost or perished. * * *"
   20 D.C.Code § 605 (1940).

that there was any dispute. The allowance made might well have been an agreed compensation to the executors. It is not an adjudication of what commissions are "permitted by law" for executors in the District of Columbia.

■ Were it proper to treat the disbursements for payroll, operating and miscellaneous expenses as inventory items, the executor would be entitled to 10% thereon. Neither the 2½% allowed by the Probate Court in this case nor the 6% allowed in the Garfinckel estate would satisfy the will. We held in Doherty v. Stoner, supra, that, in requiring the executor to be paid the maximum amount permitted by law, the will called for commissions of 10% of gross inventory.[3] But we hold that disbursements for payroll, operating and miscellaneous expenses incurred in continuing the business until its sale are not inventory items within the meaning of 20 D.C.Code § 605 (1940).[4] We are cited to no authority and are supplied with no reason to the contrary. The case of York v. Maryland Trust Co., 1926, 150 Md. 354, 133 A. 128, 46 A.L.R. 231, relied upon by the executor, supports only our holding in Doherty v. Stoner, supra, that gross and not net inventory value is the amount upon which the commissions are to be allowed. The profits realized from the business during the period of its operation after testatrix's death increased the assets of the estate but this increase was treated as part of the inventory on which the 10% commissions previously allowed were computed.

■ Notwithstanding that the disbursements referred to may not be included in inventory and therefore no percentage on them is payable as commissions due the executor, the award of 2½% of such disbursements may be interpreted as an approval by the Probate Court of extra compensation to Doherty over and above his executor's commissions. Such an allowance is not proper in this case. Doherty has not claimed as one employed in the business, as did the administratrix in Howard v. Howard, 1912, 38 App.D.C. 575. In that case the administratrix paid herself a monthly salary out of the proceeds of the business and was also allowed by the Probate Court, a commission of 2½% on the receipts of the business. We reversed on the ground that she should have been allowed a commission only on the inventory. But we did not criticize the monthly salary. She actively managed the business. In the present case there is no finding of the nature of the participation of Doherty in the actual conduct of the business. We know, of course, that his burdens were increased. But we may not assume that the business was not fully staffed or that Doherty's responsibilities were other than supervisory and advisory. It is true that he was not required to continue the business, Howard v. Howard, supra, Mersch, Probate Court Practice in the District of Columbia, pp. 116–117; Willis v. Sharp, 1889, 113 N.Y. 586, 589, 21 N.E. 705, 706, 4 L.R.A. 493, and that he followed the appropriate practice in obtaining the approval of the court to do so. 20 D.C.Code § 116 (1940). Having done so and having made no claim for compensation while operating the business or when he first filed for his commissions after the period of operation had ended, or until over two years thereafter, we think this indication of his original judgment that his part in the conduct of the business was incident to his duties as executor points to the proper conclusion, namely, that the provisions of the will regarding his compensation reasonably contemplated such services as were here rendered. See In re Davison's Will, 1940, 173 Misc. 323, 17

---

3. Were the payroll and expense items added to inventory the allowance to Doherty would be increased by $34,870.-90, making his total compensation thus far authorized approximately $75,000.00.

4. Disbursements for such expenses incurred in continuing a business under authority to do so obtained under 20 D.C. Code § 116 (1940) are, of course, elements to be considered by the Probate Court where, unlike the present situation, the court may exercise its discretion in fixing the percentage to be paid the executor as commission. But they should be considered only as bearing upon the extent of the executor's service and the amount of his responsibility, not as a part of inventory.

N.Y.S.2d 790, 792; In re Popp, 1907, 123 App.Div. 2, 107 N.Y.S. 277. These and other cases provide no clear guide due to divergencies of factual situations. But they and the authorities generally are consistent with our conclusion. Taking into account the nature of this estate, the terms of the will relating to the duties and compensation of the executor, the course of conduct of the executor himself, and the relatively short period the business was continued, the allowance to him of the maximum amount authorized by the Code to be paid to an executor as his commissions compensates him for the services he rendered incident to the operation of the business as well as for his other services. No solid basis emerges as a foundation for extra compensation. His aid in the continuation of the business for the first year after testatrix's death, the normal period for administering an estate, was not sufficiently separate from his executorial responsibilities to call for separate compensation. We held in Doherty v. Stoner, supra, that as executor he is entitled under the will, read with the Code, to the maximum commissions of ten per centum of gross inventories. No case is made for payment to him over and above an amount thus computed.

Reversed and remanded.